(Nos. 6308 and 6309.   February 26, 1937.)

FRANCISCO ASUMENDI, LOUISA ASTORICA, CARMEN ASTORICA, and GABRIEL ASTORICA, a Minor, LUIS ASTORICA, a Minor, and JESUS YSIDORO ASUMENDI, a Minor, by LOUISA ASTORICA, Their Guardian Ad Litem, Respondents, v. O. F. FERGUSON, Appellant, and FRANCISCO ASUMENDI, Cross-Appellant, v. O. F. FERGUSON, Appellant-Respondent.

[65 Pac. (2d) 713.]

452

J. F. Martin and John D. Whitney for Appellant.

Ralph R. Breshears and Dean Driscoll for Respondents.

GIVENS, J.—September 22, 1934, one Joe Goiri and his wife had his car parked facing east on the south side of the main highway between Boise and Eagle, being State Highway No. 44, at which point the highway is paved or oiled to a width of 18 feet, with a comparatively level berm or shoulder on each side of the highway, and of approximately the same level to a width of 6 feet on the south side of the oiled pavement, sloping slightly down into a borrow-pit or highway drain ditch on each side. Goiri's car was parked so that the left wheels were four or five inches to the south of the oiled portion of the highway. Immediately to the north was a private roadway leading from the highway into the home of the Asumendis'. The west side of this driveway intersecting the highway approximately straight north of the front of Goiri's car.

Goiri and his wife had been visiting with Mrs. Asumendi and two of her sons, Basilio Jose aged two years and three months, now deceased, and Jesus, age three years and five months. Goiri and his wife had left the Asumendis' and crossed the highway to their car. Mrs. Goiri was in the car, and Mr. Goiri was standing at the front left hand corner of his car talking to Mrs. Asumendi who was standing with her two children on the track north of the highway. Goiri and Mrs. Asumendi were thus talking across the highway. While so talking, little Basilio Jose darted from his mother's side and started to run across the highway to Mr. Goiri. Whether Mrs. Asumendi saw appellant's truck which was approaching from the west no one will ever know, but in any event she ran screaming after the little child endeavoring to catch him, being about 6 feet behind him. As she and the child reached a point evidently about a few inches south of the center line of the highway, they were struck by the truck. The child thrown east and south a distance of approximately 15 feet, the mother partly thrown or dragged east and slightly south a distance of 58½ feet from the point where pools of blood indicated the child lay. The truck continued on a distance of approximately 116 steps or 348 feet from the point of contact.

Pools of blood on the highway noticed immediately after the accident, indicated the places where the bodies were found, illustrated in plaintiff's exhibit ''3,'' attached hereto, a photograph taken shortly after the accident, showing by man ''M'' the point of contact, man ''K'' the place where the child lay, and the man ''J'' where the mother lay. Goiri testifying without dispute that the mother and child had reached a point north and in a direct line with his car at the time the truck struck them.

Two actions were instituted, one for the death of the mother by her husband and by the guardian *ad litem* of the minor children, and one for the death of the child by the father. Both were consolidated for trial in the court below and presentation here (only one brief on each side and one reply brief, appellant Ferguson's), and will be so considered here. The actions resulted in verdicts in favor of the surviving spouse and children for the death of Mrs. Asumendi in the amount of $7,135, and in favor of the father for the death of the child in the amount of $635.

The first assignment of error is that the court erred in admitting the testimony of a physician describing the nature and extent of the injuries of the mother and child, on the ground that the death being admitted in the answer, such evidence was inadmissible and highly prejudicial. *Kriens v. McMillan,* 42 S. D. 285, 173 N. W. 731, and *Campbell v. Sargent,* 186 Minn. 293, 243 N. W. 142, tend to support appellant's contention. On the other hand the following cases hold such evidence to be admissible on the ground that it would have some bearing on the relative speed of the lethal vehicle: Blashfield, Cyc. of Automobile Law and Practice, vol. 8, p. 229, sec. 5483, note 82; vol. 9, p. 532, sec. 6234, note 43; Huddy, Cyc. of Automobile Law, vol. 15–16, p. 346, sec. 179, note 3; Berry, Automobiles, 7th ed., vol. 5, pp. 461, 462, sec. 5.288, note 95; *Ladd v. State,* 115 Tex. Cr. Rep. 355, 27 S. W. (2d) 1098; *Posener v. Harvey,* (Tex. Civ. App.) 125 S. W. 356; *Russell v. Winters,* 185 Minn. 472, 241 N. W. 589; *Pickwick Greyhound Lines, Inc., v. Silver,* 155 Miss. 765, 125 So. 340; *Johnson v. Gustafson,* 233 Ill. App. 216 at 228; and see *Midland Trail Bus Lines v. Martin,* 100 Ind. App. 206, 194 N. E. 862 at 864, *State v. Leonard,* 195 N. C. 242, 141 S. E. 736 at 740, Nichols on Applied Evidence, vol. 2, p. 1641, sec. 55, and *Leahy v. Southern Pac. Ry. Co.,* 65 Cal. 150, 3 Pac. 622.

Appellant contends that *Faris v. Burroughs Adding Machine Co.,* 48 Ida. 310, 282 Pac. 72, has settled the question adversely to respondent. Testimony there sought to be elicited, the rejection of which was held not to be erroneous, was not of the condition of the automobile involved in the accident, but of parties who were called as experts to testify

458

as to their opinion of the probable rate of speed based upon the examination and inspection of the damaged cars, that is their physical condition after the collision, which distinguishes it from the situation herein, and *State v. Monteith,* 53 Ida. 30 at 35, 20 Pac. (2d) 1023, supports the ruling of the trial court:

"The objection to the introduction of the shoes and overalls was that they did not tend to prove any issuable fact, and were introduced solely for the purpose of prejudicing defendant of their gruesome effect. Evidence was introduced on the part of the state to the effect that when deceased's body was picked up, one shoe had been torn off by reason of the force of the impact of the automobile against his body, and there was evidence that the body had been thrown, hurled, dragged or shoved some distance. The testimony was that the laces of the shoes had been torn, and these two exhibits were pertinent as corroborative of this testimony indicating the force of the impact, and therefore the speed of the automobile, and were admissible. . . . . "

The condition and location of the bodies were part of the *res gestae,* and it does not seem that as to the child at least, the admission of the evidence even influenced the jury because the size of the verdict for the death of the child does not reflect, when one considers verdicts for deaths of children in this and other jurisdictions, any passion or prejudice against appellant, and the child was mangled and injured much more severely than the mother.

Respondents alleged and contended that the front of appellant's truck struck the mother and child. Appellant however alleged and took the position that the mother and child ran into the side of appellant's truck:

"That at the time and place mentioned in plaintiff's amended complaint, this defendant was driving a Ford truck along and upon the highway referred to in plaintiff's complaint in a careful, cautious and prudent manner and that without any notice, signal or warning of any kind, the said Basilio Jose Asumendi, ran out onto the highway and directly into the path of the truck driven by this defendant and ran into and against the left side of said truck and as a result thereof, the said Basilio Jose Asumendi was killed and that

his death was purely accidental insofar as this defendant was involved and is concerned. . . . . '' (Answer in case No. 6309.)

'' . . . . That the said Jesusa Asumendi was negligent in permitting said child to run out onto the paved portion of said highway and was herself negligent in running out onto the highway and into and against said truck and that her negligence contributed to and was the direct and proximate cause of the accident which resulted in her own death.'' (Answer in case No. 6308.)

It was legitimate for the jury to consider that if the mother and child had run into the side of the car, not struck in front, they would not have been thrown in the direction they were or have been as badly mangled and injured as they were. This evidence also had a direct bearing on respondents' claim that appellant's acts of negligence, excessive speed, inadequate brakes, and driving of an overloaded vehicle at such a speed in violation of the statute were the proximate cause of the accident, and appellant's avoidance of initial negligence and liability and counter charge that the mother was guilty of contributory negligence, and that the court improperly instructed on the last clear chance. Whether appellant could have driven further to the right after he discovered (or should have observed them before they entered the highway) the mother and child on the highway and in a place of danger, without hitting Goiri's car and yet have missed the mother and child, if they ran into the side of his truck, or whether they had advanced to a position across the pavement whereby if appellant had driven to the left or north side of the highway he would have missed them entirely, were all questions of fact to be determined by the jury. The testimony of eye-witnesses and the photographs would have justified the jury in concluding that appellant could and should have seen the mother and child at a distance further away than he said he did see them; namely 40 feet.

The statute provides that no vehicle of a gross load of 10,000 pounds or over can be driven at a speed of over 30 miles per hour. The proof is conclusive that the gross weight of the vehicle was over 10,000 pounds. Appellant admits he was driving 32 miles per hour, and there was evidence his

speed may have been as high as 45 miles per hour. On a brake test of his truck immediately after the accident, going at 30 miles per hour, he stopped at 204 feet from the place where he applied his brakes. He testified that he applied the brakes when he saw the child and after the impact he released the brakes and went some distance before stopping. If the condition of the brakes had been different and whether or not they were negligently inadequate, and if adequate and applied, would have retarded the truck more than it was and whether such slowing if any of the truck would have given the mother and child time to stop before they got in the path of the truck, or go beyond it to safety were also questions for the jury. (*Branson v. Northern Pac. Ry. Co.*, 55 Ida. 220, 41 Pac. (2d) 629; *Judd v. Oregon Short Line R. R. Co.*, 55 Ida. 461, 44 Pac. (2d) 291.)

Assignment of error No. 2 is based on the trial court's refusal to grant a nonsuit and No. 12 urges as erroneous the action of the trial court in denying Ferguson a new trial, both asked for on substantially all the other grounds assigned as error. Therefore a determination of assignments of error No. 2 and No. 12 is concluded by the disposition of the other assignments.

Assignments of error Nos. 2, 3, 4, 10 and 11 question the sufficiency of the evidence in general, and particularly with regard to the claimed contributory negligence of the mother, which may be divided into three phases. First, whether there was sufficient evidence to show initial negligence on the part of appellant, denied by him; second, appellant contends the court should have instructed the jury the mother was so guilty of contributory negligence as to prevent recovery as a matter of law in allowing the child to escape from her control by a busy thoroughfare; third, that there was no justification for the application of the last clear chance doctrine, substantially covered above.

There was a conflict in the evidence with regard to the exact speed at which appellant was driving the truck, but there was ample evidence in addition to his own admission to justify the jury that he was with a gross load of over 10,000 pounds driving over 30 miles per hour, thus guilty of negligence *per se,* as instructed by the trial court. There was

testimony that with such an overload, the regular brakes on a one and one-half ton Ford truck, which was the kind driven by appellant, would not be effective. While there was testimony, that of a brake expert testifying on the part of defendant Ferguson, that the brakes were not defective in the sense that they gripped all four wheels evenly, the evidence that they were ineffective in view of the load was practically undenied.

■ Among other authorities in support of its proposition that the mother was as a matter of law guilty of contributory negligence in allowing the child to suddenly break away from her and dart across the highway and that the jury should have been so instructed, and asked substantially this in defendant's requested instructions Nos. 2, 3, 4, and 7, rejection of which are assigned as error and may be considered herewith, appellant cites *Rittle v. Zeller,* 100 Pa. Super. Ct. 516, and *Kuehne v. Brown,* 257 Pa. 37, 101 Atl. 77, which are from Pennsylvania and are distinguishable as not applicable herein, because neither case considered the doctrine of last clear chance, and the same is true of the other cases cited by appellant on this point. (*Stachowicz v. Matera,* 257 Mass. 283, 153 N. E. 547; *Sullivan v. Chadwick,* 236 Mass. 130, 127 N. E. 632; *Muller v. Standard Oil Co.,* 180 Cal. 260, 180 Pac. 605; *Wise v. Eubanks,* (La. App.) 159 So. 161; *Johnson v. Reading City Pass. Ry. Co.,* 160 Pa. 647, 28 Atl. 1001, 40 Am. St. 752.) In *Wise v. Eubanks, supra,* there was no primary or initial negligence on the part of the defendant. Furthermore the more generally accepted and better reasoned rule under such circumstances as disclosed herein is that the question of contributory negligence of the attending parent or adult is for the jury. (*Wheeler v. Oregon R. & Nav. Co.,* 16 Ida. 375, 102 Pac. 347; Blashfield, Cyc. of Automobile Law, vol. 2, p. 595, sec. 1552, note 19; note, 51 A. L. R. 209 at 218, and cases there cited; *Walkup v. Covington,* 18 Tenn. App. 117, 73 S. W. (2d) 718; *Hine v. Aird-Don Co.,* 232 App. Div. 359, 250 N. Y. Supp. 75; *Farrell v. Hidish,* 132 Me. 57, 165 Atl. 903; *Rondeau v. Kay,* 282 Mass. 452, 184 N. E. 926; *Minsk v. Pitaro,* 284 Mass. 109, 187 N. E. 224; *Faircloth v. Framingham Waste Material Co.,* 286 Mass. 320, 190 N. E. 609; *Dickey v. Haes,* 195 Minn. 292, 262 N. W. 869; *Touris v. Fairmont*

462

*Creamery Co.,* 228 App. Div. 569, 240 N. Y. Supp. 225; *Crane v. Sadler,* 96 Pa. Super. Ct. 217; 45 C. J. 1314, sec. 873, note 90; *Waterman v. Visalia Elec. R. Co.,* 23 Cal. App. 350, 137 Pac. 1096; and see *Fox v. Oakland Consol. St. Ry. Co.,* 118 Cal. 55, 50 Pac. 25, 62 Am. St. 216; *Higgins v. Deeney,* 78 Cal. 578, 21 Pac. 428; *Ihl v. Forty-Second St. & Grand St. Ferry R. R. Co.,* 47 N. Y. 317, 7 Am. Rep. 450.)

Assignment of error No. 5 challenges this portion of instruction No. 9 underscored:

"As regards the speed at which motor vehicles may be driven on the highways of this state, the statute provides that it shall be *prima facie* lawful to drive a vehicle on the highways of this state at a speed of thirty-five miles an hour, except when approaching within fifty feet of a grade crossing of any steam, electric, or street railway, or when passing a school during school recess or when children are going to or leaving school during opening or closing hours, or when approaching within fifty feet and in traversing an intersection of highways, when the driver's view is obstructed, in which latter cases the rate of speed is limited to fifteen miles an hour, . . . . " (underscoring ours).

on the ground that there was neither allegation or proof that the highway at or near the accident crossed a railway or went by a school house, or was at a highway intersection, which was true, and the portion of the instruction given should not have been given, but it is not prejudicial for this reason: appellant himself admitted he was driving at least 32 miles per hour, and thus under another section of the statute contained in the instructions, and referred to, he was guilty of negligence *per se* because his gross load exceeded 10,000 pounds. To make the distinction clearer, if there had been a dispute as to whether appellant was driving just under or over 15 miles per hour, a different situation would have been presented. Only instructions which are pertinent to the pleading and the evidence should be given, but where it appears that the giving of the instruction did not result in any substantial injury, though not founded on the issues, the cause will not be reversed. (*Stinson v. Rourke,* 4 Ida.

765, 46 Pac. 445; *Golden v. Spokane etc. R. R. Co.*, 20 Ida. 526, 118 Pac. 1076; *Brown v. Feeler*, 35 Ida. 57, 204 Pac. 659; *Packard v. O'Neil*, 45 Ida. 427, 262 Pac. 881, 56 A. L. R. 317; *Faris v. Burroughs Adding Machine Co., supra.*)

Instruction No. 15 challenged in assignment of error No. 6 was proper and in line with the authorities, *supra,* as to contributory negligence of the mother.

Assignment of error No. 7 criticizes instruction No. 16, as follows:

"You are, however, instructed that this rule does not apply to a child so young that he does not apprehend or appreciate danger to himself, and you are further instructed that a child of two or three years of age is incapable, as a matter of law, of negligence or contributory negligence, and neither negligence nor contributory negligence on the part of the deceased child, Basilio Jose Asumendi, constitutes any defense to this action."

contending that it was not tied into any other instruction and was misleading because appellant did not rely on the contributory negligence of the child. Nevertheless, it was proper and necessary for the court as it did in instructions No. 15 and No. 16 to fully instruct the jury with regard to the subject matter of contributory negligence, both on the part of the mother or the child.

Assignment of error No. 8 charges that the court erroneously injected into the case the last clear chance doctrine in instruction No. 17. The assignment of error does not question the correctness of the instruction, but that the facts of the case did not warrant the instruction. The analysis of the evidence as to the condition of the two bodies, *supra,* is sufficient to show that there was a question presented to the jury under the last clear chance doctrine, and that under similar situations this doctrine has been repeatedly applied by this court. (*Pilmer v. Boise Traction Co.*, 14 Ida. 327, 94 Pac. 432; 125 Am. St. 161, 15 L. R. A., N. S., 254; *Anderson v. Great Northern Ry. Co.*, 15 Ida. 513, 99 Pac. 91; *Short v. Boise Valley Traction Co.*, 38 Ida. 593, 225 Pac. 398; *Branson v. Northern Pac. Ry. Co. supra.*)

Assignment of error No. 9 urges that instructions Nos. 2, 4, 6, 7, 8, 9, 10, and 11 requested by appellant should

have been given. Requested instructions No. 2 and No. 4 did not correctly state the law as heretofore laid down as to contributory negligence, and were sufficiently covered by instructions as to the mother and child in instructions Nos. 13, 14, and 15.

Appellant's requested instruction No. 6 was sufficiently covered by instruction No. 7.

Appellant's requested instruction No. 7 overlooks the doctrine of last clear chance and was sufficiently covered by instruction No. 15.

Appellant's requested instruction No. 8 was covered by instruction No. 18.

Appellant's requested instruction No. 9 was properly rejected because there was no charge of negligence as regards the width of the truck, as clearly stated by instruction No. 5 based on paragraph IV of the complaint, and if given, the court would have been subject to the criticism leveled by appellant against instruction No. 9 given by the court.

Appellant's requested instruction No. 10 was covered by instructions No. 5 and No. 19, and requested instruction No. 11 by instruction No. 12.

Respondent Francisco Asumendi cross-appealed from the order of the district court denying a motion for new trial made by him in the child's case, No. 6309, on the ground that the verdict was inadequate. Numerous cases are cited and others may be found holding that $635 for the death of a child are inadequate, and verdicts in larger amounts have been sustained. (*Anderson v. Great Northern Ry. Co., supra*; *Golden v. Spokane & Inland Ry. Co., supra*; *Ellis v. Ashton & St. Anthony P. Co.*, 41 Ida. 106, 238 Pac. 517; *York v. Pacific & Northwestern Ry. Co.*, 8 Ida. 574, 69 Pac. 1042; *Gorham v. Cohen*, 102 Conn. 567, 129 Atl. 523; *Sweeten v. Pacific Power & Light Co.*, 88 Wash. 679, 153 Pac. 1054; *Kranzusch v. Trustee Co.*, 93 Wash. 629, 161 Pac. 492; *Patton v. Frost-Johnson Lumber Co.*, 142 La. 117, 76 So. 580; *Rothenberger v. Powers Fuel etc. Co.*, 148 Minn, 209, 181 N. W. 641; *Schaff v. Shepherd*, (Tex. Civ. App.) 196 S. W. 232; *Devine v. Rammesathi*, 211 Ill. App. 294; and note, 48 A. L. R. at 837.) On the other hand no case has been cited, which holds that a trial court should be reversed because of his abuse of dis-

cretion in denying a new trial because of inadequacy of damages for the death of a minor child, comparable to the claimed inadequacy herein. All the cases cited sustaining a greater award do so in merely holding the trial court did not err in granting a new trial because the amount was insufficient or not excessive or sustaining a verdict in greater amounts. (*Riggs v. Smith,* 52 Ida. 43, 11 Pac. (2d) 358; *Hearne v. De Young,* 132 Cal. 357, 64 Pac. 576; *Townsend v. Briggs,* 88 Cal. 230, 26 Pac. 108; *Wolford v. Lyon Gravel G. M. Co.,* 63 Cal. 483; *Benjamin v. Stewart,* 61 Cal. 605; *Mariani v. Dougherty,* 46 Cal. 26; *Hall v. Bark Emily Banning,* 33 Cal. 522; *Donnatin v. Union Hardware & Metal Co.,* 38 Cal. App. 8, 175 Pac. 26, 177 Pac. 845; *Taylor v. Northern Elec. Ry. Co.,* 26 Cal. App. 765, 148 Pac. 543.) While we do not mean to be understood as saying that damages in the amount herein are adequate, on the other hand, since the determination of damages is peculiarly a matter for the jury, and the trial court refused to grant a new trial on this ground, we cannot say he so abused his discretion that it should be reversed, or that his refusal was so contrary to law as to require a reversal. (*Hall v. Jensen,* 14 Ida. 165, 93 Pac. 962; *Say v. Hodgin,* 20 Ida. 64, 116 Pac. 410; *Cox v. Cox,* 22 Ida. 692, 127 Pac. 679; *Baillie v. City of Wallace,* 22 Ida. 702, 127 Pac. 908; *Montgomery v. Gray,* 26 Ida. 583, 585, 144 Pac. 646; *Stolz v. Scott,* 28 Ida. 417, 154 Pac. 982; *Watt v. Stanfield,* 36 Ida. 366, 210 Pac. 998; *McAllister v. Bardsley,* 37 Ida. 220, 215 Pac. 852; *Ross v. Swearingen,* 39 Ida. 35, 225 Pac. 1021; *Applebaum v. Stanton,* 47 Ida. 395, 276 Pac. 47; *Stone v. Matthies,* 49 Ida. 277, 287 Pac. 951; *McCoy v. Krengel,* 52 Ida. 626, 17 Pac. (2d) 547.) Six hundred and thirty-five dollars is sufficiently substantial in amount to distinguish the holding in *Riggs v. Smith, supra.*

The judgment in the action for the death of Mrs. Asumendi, No. 6308, and judgment in the action for the death of Basilio Jose Asumendi, No. 6309, and the order denying a motion for a new trial in the action for the death of Basilio Jose Asumendi, No. 6309, are affirmed.

Costs of the transcript in the case of *Francisco Asumendi, Plaintiff and Appellant, v. O. F. Ferguson, Defendant and Appellant,* No. 6309, to be divided equally be-

tween appellant and respondent, because both are appellants and respondents, and appellant Ferguson lost on the appeal from the judgment, and appellant and respondent Asumendi lost on his appeal from the denial of a motion for a new trial.

Costs in the case of *Francisco Asumendi, Louisa Astorica, et al., Plaintiffs and Respondents, v. O. F. Ferguson, Defendant and Appellant,* No. 6308, awarded against appellant. Under the rules costs for 40 pages only of a brief are allowed. Respondents' brief in total was 69 pages, but contained more than 40 pages applicable to appellant Ferguson's appeal; in other words, all of the portion of the brief applicable to the cross-appeal of Francisco Asumendi could be eliminated and still 40 pages remain applicable to respondents' side in case No. 6308, therefore respondents having won on the appeal from the judgment, they would be entitled to the costs of the brief, and it is so ordered, up to the 40 pages; i. e. $40.

Costs of respondent Ferguson's reply brief in case No. 6309 assessed against cross-appellant, Asumendi.

Morgan, C. J., and Holden, J., concur.

Ailshie, J., concurs in conclusion reached.